UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KENNETH WALTERS** <br> 9310 Biemans Terrace <br> Springdale, MD 20774 <br><br> Plaintiff, <br><br> v. <br><br> **CROWELL & MORING, LLP** <br> 1001 Pennsylvania Avenue, N.W., # 1100 <br> Washington, DC 20004 <br><br> Defendant | Case No. _____ <br> **JURY TRIAL DEMAND** |

## COMPLAINT

**COMES NOW**, Plaintiff Kenneth Walters ("Mr. Walters"), by and through counsel, pursuant to the Federal Rules of Civil Procedure, and for his causes of action against Defendant Crowell & Moring, LLP, alleges as follows:

### I. INTRODUCTION

1. This is a civil action brought under 42 U.S.C. § 1981, the Constitution of the United States, and the Constitution and laws of the District of Columbia, seeking compensatory, special, consequential, and punitive damages, and such other related relief as the Court deems proper for violation of the civil rights, privileges, and immunities of the Plaintiff, and for other injuries of and to the Plaintiff, further asking for reasonable attorneys fees as allowed by 42 U.S.C. § 1988 and litigation costs, for injuries caused to Plaintiff. Plaintiff's injuries were proximately caused by Defendant's acts, actions, conduct or omissions, and were the result of intentional, malicious, deliberate indifference and/or reckless disregard for the Plaintiff's rights.

1

## II. JURISDICTION AND VENUE

2.  This action arises under the United States Constitution, under federal law, 42 U.S.C. § 1981.

3.  This Court has original jurisdiction over Plaintiff's civil rights claims by operation of 28 U.S.C. §§ 1331 and 1343.

4.  Venue is proper pursuant to 28 U.S.C. § 1391 in the United States District Court for the District of Columbia because all or a substantial part of the events or omissions on which Plaintiff's claims herein are based occurred in Washington, D.C.

5.  This Court is authorized to award nominal damages under 28 U.S.C. § 1343(a)(4).

6.  This Court is authorized to award attorney's fees and related expert fees under 42 U.S.C. § 1988(b) and 1988(c).

7.  No administrative exhaustion or other conditions precedent are required prior to the filing of claims under 42 U.S.C. § 1981.

## III. PARTIES

8.  Plaintiff, Mr. Walters, is a Black or African-American male and a former employee of Defendant.

9.  Defendant Crowell & Moring LLP is a limited liability partnership with its principal place of business at 1001 Pennsylvania Avenue NW, Washington, DC 20004.

## IV. STATEMENT OF FACTS

10. In November 2004, Defendant hired Mr. Walters as a Records Manager in Defendant's Headquarters Office in the District of Columbia.

11. In September 2015, Defendant promoted Mr. Walters to Senior Manager of Records as a result of his diligence and dedication.

12. As Senior Manager of Records, Mr. Walters' duties included management of the daily operations of the records department and 17 staff employees across Defendant's five domestic and two international offices.

13. Defendant's employment practices included transferring problematic or underperforming employees to its records department.

14. As a result, many of the employees that Mr. Walters supervised were placed under his supervision because of their poor work performance.

15. Some of the employees Mr. Walters supervised had poor performance because of non-work related issues and problems, including but not limited to: emotional or psychological issues, financial issues, and interpersonal or family issues outside of the workplace.

16. Despite these challenges, Mr. Walters made significant contributions to employee development and enrichment to ensure Defendant's retention of successful employees.

17. During Mr. Walters' tenure, the records department enjoyed the lowest employee attrition rate of all of Defendant's administrative departments.

18. During his tenure with Defendant, Mr. Walters consistently performed at a high level.

19. In his most recent review prior to his termination, Mr. Walters was rated "Exceeding expectations" as a testament to his exceptional performance, and as a result Mr. Walters received a substantial annual bonus.

20. Mr. Walters was the only African-American senior professional management staff member in Defendant's Records Management Group.

21. Over the course of Mr. Walters' employment with Defendant, beginning in or about 2012 or 2013, Defendant began replacing Black employees in administrative roles with white employees.

22. Defendant's former Chief Operating Officer, a Black woman, was replaced by Darryl Hair, a white male, who served for approximately two years before departing.

23. Mr. Hair was replaced by James Dixon, a white male.

24. Under James Dixon's supervision, other Black employees in administrative roles were replaced by white employees.

25. In September of 2018, Defendant conducted an investigation into allegations of bullying and mishandling of the records department by Mr. Walters.

26. Mr. Walters was unaware of this investigation until on or about September 12, 2018, Mr. Walters was called into a meeting with Trina Fairly Barlow, the co-chair of Defendant's Labor and Employment Group, and Carmen Barbosa, Defendant's Human Resources Manager.

27. During the September 12, 2018 meeting Ms. Barlow and Ms. Barbosa informed Mr. Walters that the Company had concerns about Mr. Walter's management style.

28. Ms. Barlow and Ms. Barbosa did not inform Mr. Walters of the true nature of the investigation.

29. Because Mr. Walters was not aware of any investigation, he was surprised, unprepared, and nervous during the September 12, 2018 meeting.

30. In the September 12, 2018 meeting, Mr. Walters was not informed of any details of the investigation.

31. In the meeting Ms. Barlow and Ms. Barbosa asked Mr. Walters broad and vague questions about his interactions with the employees he supervised.

32. The questions asked by Ms. Barlow and Ms. Barbosa spanned the entire scope and time of Mr. Walters' employment with Defendant.

33. The questions asked by Ms. Barlow and Ms. Barbosa were designed to elicit incomplete or improper responses to serve as the basis for terminating Mr. Walters.

34. During the September 12, 2018 meeting, Mr. Walters asked Ms. Barlow and Ms. Barbosa whether his supervisor, Gary Corso, was aware of the meeting.

35. Ms. Barlow and Ms. Barbosa informed Mr. Walters that his supervisor was not aware of the meeting.

36. Mr. Walters raised concerns that his supervisor was not aware of the meeting or present for it, which went unanswered by Ms. Barlow and Ms. Barbosa.

37. Mr. Walters answered the questions asked by Ms. Barlow and Ms. Barbosa in the September 12, 2018 meeting honestly and to the best of his ability.

38. Mr. Corso subsequently met with Ms. Barlow and Ms. Barbosa on or about September 13, 2018.

39. Upon information and belief, the September 13, 2018 meeting was to discuss Defendant's investigation of Mr. Walters.

40. Mr. Corso and Mr. Walters met on or about October 22, 2018, for Mr. Walters' annual performance self-evaluation.

41. In that meeting, Mr. Corso told Mr. Walters he was very impressed with Mr. Walters' 2018 accomplishments.

42. In the October 22, 2018 meeting, Mr. Corso told Mr. Walters about the September 13, 2018 meeting.

43. Mr. Corso also told Mr. Walters that he felt uncomfortable about the September 13, 2018 meeting.

44. Mr. Corso asked Mr. Walters if Mr. Walters had met with Ms. Barlow and Ms. Barbosa as well, to which Mr. Walters replied that he had, but he was told by Ms. Barbosa not to discuss the meeting with anyone else.

45. Other than the conversation with Mr. Corso, Mr. Walters did not discuss the September 12, 2018 meeting with anyone.

46. In the course of Defendant's investigation, Defendant conducted a review of Mr. Walters' work email account.

47. In the course of the investigation, Defendant interviewed Mr. Walters and other employees in the records department.

48. On or about October 24, 2018, Mr. Walters was called to a meeting with Defendant's Chief Operations Officer James Dixon, and Ms. Barbosa.

49. The October 24, 2018 meeting was the first time Defendant disclosed the true nature of the investigation into Mr. Walters.

50. Ms. Barbosa informed Mr. Walters that the true nature of the investigation was related to allegations of bullying against Mr. Walters.

51. During the October 24, 2018 meeting, no evidence of bullying was brought to light.

52. During this meeting, Ms. Barbosa informed Mr. Walters that in the course of Defendant's investigation, Defendant discovered that Mr. Walters was using his work email to run a personal commercial venture.

53. The alleged personal commercial venture was described by Ms. Barbosa as "buying pizzas and sending receipts"

54. The actual nature of the alleged personal commercial venture was a "secret shopper" program that Mr. Walters participated in, wherein he would go to restaurants and order food, take pictures of the food, and send those pictures to the program via a mobile phone app.

55. Mr. Walters did not engage in any "secret shopper" activities during Defendant's business hours.

56. Mr. Walters participated in the "secret shopper" program because it was a way for him to obtain discounted or free food items from restaurants he frequented.

57. Mr. Walters received less than fifty dollars in total remuneration for the entire time he participated in the "secret shopper" program.

58. A commercial venture is properly defined as the buying or selling of goods that involves the risk of failure.

59. The "secret shopper" program that Mr. Walters participated in was not a commercial venture.

60. The "secret shopper" program that Mr. Walters participated in was not a violation of any of Defendant's policies.

61. Defendants' statements about Mr. Walters using his work email for a personal commercial venture were untrue.

62. Ms. Barbosa further informed Mr. Walters that Defendant determined that he was dishonest during the September 12, 2018 meeting.

63. Ms. Barbosa did not inform Mr. Walters of the nature of his alleged dishonesty, nor did she give him an opportunity to respond or correct any alleged dishonesty.

64. Defendant's statements that Mr. Walters was dishonest are unsubstantiated and untrue.

65. Ms. Barbosa further informed Mr. Walters that Defendant determined Mr. Walters interfered with Defendant's investigation.

66. Defendant's statements that Mr. Walters interfered with Defendant's investigation are unsubstantiated and untrue.

67. Ms. Barbosa did not inform Mr. Walters of the nature of his alleged dishonesty, nor did she give him an opportunity to respond or correct any alleged dishonesty.

68. Ms. Barbosa provided no evidence to support her allegations that Mr. Walters was dishonest during the September 12, 2018 meeting, or to support her allegations that Mr. Walters interfered with Defendant's investigation.

69. Defendant found no evidence that supported its investigation into the allegations against Mr. Walters of bullying or mishandling of the records department.

70. Ms. Barbosa and Mr. Dixon then informed Mr. Walters that his employment with Defendant was terminated immediately.

71. Mr. Walters' supervisor, Mr. Corso, was not consulted in making the determination to terminate Mr. Walters' employment.

72. Despite terminating Mr. Walters for cause, Defendant offered Mr. Walters two months severance pay, totalling $17,000, as well as two months of COBRA subsidies, contingent on his signing a general release of claims against Defendant.

73. Defendant sought a general release from Mr. Walters because Defendant knew terminating Mr. Walters was in violation of Defendant's own policies and in violation of the law.

74. Mr. Walters responded that he was shocked and felt persecuted by Defendant's actions.

75. Defendant did not provide Mr. Walters with a termination letter.

76. Mr. Walter's race was a determinative factor in Defendant's decision to terminate his employment.

77. Defendant's termination of Mr. Walters was a violation of Defendant's policies.

78. Defendant's reasons for terminating Mr. Walters were pretextual and aimed at masking the racial discrimination that was the true reason for Mr. Walters' termination.

79. Defendant has never terminated a non-Black employee for the same reasons it terminated Mr. Walters.

80. Defendant's non-black employees who were accused of similar violations were disciplined in less severe ways than termination.

## V. DAMAGES

81. Because of statutorily impermissible, willful, and malicious acts by Defendant and its representatives and agents, Mr. Walters has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to 42 U.S.C. § 1981.

82. As a consequence of the unlawful and outrageous actions of Defendant, Mr. Walters has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish.

83. Mr. Walters seeks recovery, compensatory, and equitable (i.e., back pay and front pay) damages, as well as attorney's fees, and costs and pre and post judgment interest in the maximum amounts allowed by law pursuant to 42 U.S.C. § 1981, 42 U.S.C. § 1988(b), and 42 U.S.C. § 1988(c).

**COUNT 1: RACE-BASED DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

84. Plaintiff hereby repeated and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

85. Plaintiff is a member of a protected class and racial minority by virtue of his race, referred to as Black or African-American.

86. By terminating Plaintiff's employment, Defendant denied Plaintiff the rights guaranteed to him under 42 U.S.C. § 1981, which ensures that all persons "shall have the same right . . . to make and enforce contracts," which is defined by 42 U.S.C. § 1981 to be "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

87. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to: loss of past and future income, compensation, and benefits for which he is entitled an award of monetary damages and other relief.

88. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to: depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional

pain and suffering for which he is entitled to an award of monetary damages and other relief.

89. Defendant's unlawful discriminatory conduct constitutes a willful and wanton violation of 42 U.S.C. § 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputation and loss of career fulfillment;

F. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

G. An award of punitive damages;

H. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury trial for all issues.

/s/ Ardra O'Neal
Attorney for Plaintiff
Ardra O'Neal, Esq. (Bar No.: 45717)
The O'Neal Firm, LLP
700 12th Street, NW, Suite 700
Washington, DC 20005
1-866-771-0151 (Phone/Fax)
ardra@theonealfirm.com